**RECORD NUMBER: 12-1329**

# United States Court of Appeals
### *for the*
# Fourth Circuit

**BANNER LIFE INSURANCE COMPANY,**

*Appellee,*

– v. –

**JACQUELINE L. NOEL,**

*Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND**

# OPENING BRIEF OF APPELLANT

JOSEPH E. BLACKBURN, JR.
BLACKBURN, CONTE, SCHILLING
& CLICK, PC
300 West Main Street
Richmond, Virginia 23220
(804) 782-1111

*Counsel for Appellant*

CP COUNSEL PRESS • VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Only one form needs to be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case.  Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.  Counsel has a continuing duty to update this information.

No. 12-1329        Caption: Banner Life Insurance Company v. Jacqueline L. Noel

Pursuant to FRAP 26.1 and Local Rule 26.1,

Jacqueline L. Noel
(name of party/amicus)


who is _____appellant_____, makes the following disclosure:
       (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                            ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?      ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                          ☐YES ☑NO
        If yes, identify any trustee and the members of any creditors' committee:

# CERTIFICATE OF SERVICE
***************************

I certify that on ___March 20, 2012___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Robert B. Delano, Jr., Esquire, VSB #20619
Sands Anderson PC
1111 East Main Street
P. O. Box 1998
Richmond, VA  23219-1998
Telephone (804) 648-1636   Fax (804) 783-2926
E-mail:  CDelano@SandsAnderson.com

/s/ Joseph E. Blackburn, Jr.                                    3-20-2012
_____            _____
         (signature)                                            (date)

11/17/2011
SCC

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ........................................................................ ii

JURISDICTIONAL STATEMENT ............................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................... 2

STATEMENT OF THE CASE...................................................... 2

STATEMENT OF FACTS ........................................................ 3

SUMMARY OF THE ARGUMENT ............................................ 11

ARGUMENT ...................................................................... 12

     STANDARD OF REVIEW ................................................ 12

     DISCUSSION OF THE ISSUES ...................................... 13

CONCLUSION .................................................................. 23

REQUEST FOR ORAL ARGUMENT ...................................... 24

EXHIBIT A – TIMELINE.................................................... A-1

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Bituminous Casualty Corp.* v. *Denver Baldwin,*
    196 Va. 1020; 86 S.E.2d 836 (Va. 1955) .......................................... 11

*Commercial Underwriters Insurance Company v. Hunt & Calderone,*
    261 Va. 38; 540 S.E.2d 491 (2001) .................................................... 16

*Finch v. Garrett,*
    109 Va. 114; 63 S.E. 417 .............................................................. 18, 21

*Great Am. Ins. Co. v. Gross*,
    2008 U.S. Dist. LEXIS 10079; 2008 WL 376263 ............................ 14

*Grymes v. Sanders,*
    93 U.S. 55; 23 L.Ed. 798; 1876 U.S. LEXIS 1349 ........................... 22

*Harrell v. North Carolina Mutua Life,*
    215 Va. 829; 213 S.E. 2d 792 (1975) ................................................ 16

*Hendricks v. Cent. Reserve Life Ins. Co.,*
    39 F.3d 507; 1994 U.S. App. LEXIS 31301 (4th Cir. 1994) ............. 12

*Link Associates v. Jefferson Standard Life Ins. Co.*,
    223 Va. 479; 291 S.E.2d 212; 1982 Va. LEXIS 228 (1982).............. 21

*Montgomery Mutual Insurance Company v. Jeffrey Riddle, et al.,*
    266 Va. 539; 587 S.E. 2d 513 (2003) ................................................ 15

*Mut. of Omaha Ins. Co. v. Echols Adm'rs,*
    207 Va. 949; 154 S.E.2d 169 (1967) ................................................ 16

*Seabulk v. American Home*,
    377 F.3d 408; 2004 U.S. App. LEXIS 15539 (4th Cir. 2004) ...... 12, 14

*United States for use of Global Bldg. Supply, Inc. v. WNH Ltd. P'ship.,*
    995 F.2d 515; 1993 U.S. App. LEXIS 13518 (4th Cir. 1993) ............ 12

*United States v. Idlewild Pharmacy, Inc.,*
    308 F.Supp. 19; 1969 U.S. Dist. LEXIS 10678 ................................. 22

*West End Real Estate Co. v. Claiborne*,
    97 Va. 734; 34 S.E. 900 (1900) ........................................................ 21

## Rules and Statues

28 U.S.C. § 1291 ..................................................................................... 2

28 U.S.C. § 1332(a) ................................................................................ 1

Va. Code § 38.2-209 .............................................................................. 2

Va. Code § 38.2-309 ................................................................. 15, 16, 24

## Other Authorities

Black's Law Dictionary 991 (7th ed. 1999)................................................ 15

## UNITED STATES COURT OF APPEALS
## FOR THE
## FOURTH CIRCUIT

BANNER LIFE INSURANCE COMPANY,        )
                                      )
                          Appellee,   )
                                      )
V.                                    )   **Case Nos. 12-1329**
                                      )                 **12-1498**
JACQUELINE L. NOEL,                   )
                                      )
                          Appellant   )

## APPELLANT'S BRIEF

## JURISDICTIONAL STATEMENT

The original jurisdiction of the District Court is pursuant to 28 U.S.C. § 1332(a), there being complete diversity of citizenship between Maryland plaintiff, Banner Life Insurance Company (Banner) and Virginia defendant, Jacqueline L. Noel (Jacqueline) and the amount in controversy exceeding $75,000.

Notice of appeal in case #12-1329 was timely filed on March 9, 2012, from a final judgment of the District Court entered on February 15, 2012. An amended notice of appeal in case #12-1498 from the District Court's final order regarding

1

attorney's fees entered April 5, 2012 was timely filed April 12, 2012; therefore, this Court has proper appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

A.  Does the "Other Limitations" provision in the temporary insurance contract (the "TIAA") incorporate by reference the Part 2 questionnaire related to the thirty year permanent policy?

B.  Even if Jacqueline's husband, Gary Noel ("Gary"), made misrepresentations in the Part 2 questionnaire for the permanent life insurance policy, were the misrepresentations material to Banner entering into the TIAA?

C.  Is Banner entitled to rescission of the TIAA after failing to timely repudiate its obligations thereunder when it discovered what it now claims are material misrepresentations in Part 2, or is Banner estopped from doing so?

D.  Did the District Court err in awarding attorney's fees and costs to Banner in a discovery dispute relating to the binding of insurance coverage?

## STATEMENT OF THE CASE

Banner filed a Declaratory Judgment action seeking declaration of a right it claimed to have to rescind its obligations under the TIAA. Jacqueline filed an Answer denying that Banner was entitled to rescission, affirmatively pleading estoppel, and a Counterclaim for breach of contract and attorney's fees pursuant to § 38.2-209 of the Code of Virginia. After discovery, she filed for Summary

2

Judgment on her contract action.  Banner then filed for Summary Judgment on its Declaratory Judgment action.  On February 15, 2012, the District Court granted Banner's Motion for Summary Judgment.   After the District Court's final judgment on February 15, 2012, a timely notice of appeal was filed in this Court on March 9, 2012.  After the District Court's final order of April 5, 2012, setting the amount of attorney's fees and costs awarded Banner regarding the discovery dispute, an amended notice of appeal was filed on April 12, 2012.  This Court consolidated the appeals by Order of April 20, 2012.

## STATEMENT OF FACTS

### The Basics

A timeline is attached as Exhibit A to this Brief.

Gary and his wife, Jacqueline, decided to purchase $1,000,000 of life insurance protection insuring his life with her as beneficiary.  He was 45 years old. (17)[1]   On November 30, 2010 Gary met with insurance agent Christopher Roberts ("Roberts") to obtain permanent life insurance through Banner.  Roberts has no underwriting authority. (66) During the course of this meeting, three Banner forms were signed by Gary. (17-26)  These three forms are separately titled.  Part 1 asks general questions. (17-21)  Part 2 asks medical questions. (22-24) The last part is a Temporary Insurance Application and Agreement (hereafter the "TIAA"). (25-26)

---

[1] All page references refer to the Joint Appendix.

3

Each of these was separately signed by Gary. Roberts received a premium check for $913.90 from Jacqueline for the TIAA (67) at which time he told her Gary was covered under the TIAA. (377) Thereafter, he sent all three forms and the check to Banner. Banner cashed the check and bound coverage on the TIAA on December 10, 2010. (179) A notation in Banner's computer system dated December 10, 2010 shows "Application of check changed TIAA bound N to Y". (179) The "N" means "no" and the "Y" means "yes". (58) Four days later, Sean Lucas ("Lucas"), the underwriter handling the file, first looked at the documents. (71) On February 7, 2011, Gary died unexpectedly. Jacqueline was named as his beneficiary in the TIAA. (25) On February 4, 2011, three days before Gary's death, Banner made a decision to postpone the issuance of the permanent policy to Gary pending additional investigation. (12) However, before reporting this decision to postpone issuance of the permanent policy, Banner was notified that Gary had died. (12) Banner could have, but did not, cancel the TIAA when it decided to postpone issuance of the permanent term policy. Had Banner mailed such a notification on February 4, 2011 and refunded the unearned portion of the premium for the TIAA to Gary that Friday, the coverage under the TIAA would have automatically ended pursuant to the Stop Date provisions of the TIAA. (25) Having not done so, the TIAA was still in effect at the time of Gary's death.

4

Banner waited five (5) months after Gary's death to notify Jacqueline through counsel that coverage under the TIAA was declined by letter from Jana Knowles of the claims department dated July 5, 2011. (30-34)

## The Banner Documents

The agent had a package containing 11 pages with him when he met with Gary. (17-27)  While Banner has and will try to portray these 11 pages as being one application because they are numbered sequentially, they actually are distinct from a contractual standpoint and will be discussed separately.

**A.     The TIAA.**

The TIAA is a contract offered by Banner that provides temporary life insurance coverage while a permanent application is going through the underwriting process.   It is a separate and distinct contract which Banner acknowledged by seeking rescission of it in its Complaint. (15)  It is found on pages 25 and 26 of the Appendix and is the center of the dispute here.

The TIAA contains a section called "Temporary Insurance Application" and a section called "Temporary Insurance Agreement." (25)  The application section consists of four questions to be answered "Yes" or "No" and states that "Temporary Insurance cannot begin and you should make no payment if any question is answered Yes or left blank."  (Id.)  Questions 3 and 4 are medical questions about Gary's medical history.  Banner admits Gary answered all four

5

questions truthfully. (72,73) The agreement section of the TIAA states the amount of coverage, sets the start date of coverage as the date of the TIAA, and provides that the consideration for the temporary insurance is the Temporary Insurance Application and payment for it. (Id.) Gary provided both.

The TIAA's "Stop Dates" language says:

> Temporary insurance automatically ends on the earliest of the following: (1) the date the Owner withdraws the application for insurance or refuses to accept any policy issued or offered; (2) the date the insurer mails or otherwise provides notice to the Owner or his/her agent that it was unable to approve the requested coverage at the premium quoted and a counter offer is made by the insurer; (3) the date the insurer mails or otherwise provides notice to the Owner or his/her representative that it has declined or cancelled the application; (4) the date the Insurer mails or otherwise provides a premium refund to the Owner or his/her representative; (5) the date the policy is delivered to the Owner and delivery requirements have been completed. (Id.)

Four of these five stop date provisions were controlled by Banner, and none of these "Stop Dates" was ever implemented by Banner.

In addition to the application and agreement sections, the TIAA also specifically refers to the document titled "Part 1" (17-21) and requires that Part 1 be completed in conjunction with the TIAA. Part 1 is part of the application for the permanent insurance policy. The TIAA does not mention the form titled "Part 2 Medical History." In fact, according to Banner's instructions to its agents, completion of Part 2 is not required prior to signing the TIAA. (68)

6

The TIAA also contains a section titled "Other Limitations" which provides that "The Insurer's liability will be limited to a return of the Amount Remitted if: (1) any part of the life insurance application or this TIAA contains a misrepresentation material to the Insurer; or (2) the Proposed Insured dies by suicide."

The TIAA protects against unacceptable risk by providing that coverage does not begin if any of the four application questions in the TIAA are answered "Yes." (25, 26)   Essentially, these four questions serve the underwriting function for Banner's temporary insurance product.  Gary truthfully and accurately checked "No" to all four TIAA application questions.  As a result, temporary coverage began as of the date it was signed.

The signature portion of the TIAA says:

I represent that:  (1) I have read and received a copy of this TIAA and agree to all of its terms and conditions; (2) I understand and agree that temporary insurance will not begin if any question in this TIAA is answered Yes or left blank and any collection of premium will not activate coverage under this agreement; (3) the answers given in this TIAA are true and correct, and I understand that, if they are false, temporary insurance may be denied or declined… (26)

**B.    Part 1.**

Part 1 is part of the application for an insurance policy and is found on pages 17 through 21 of the Appendix.  The word "application" is found several times

within it.  Gary signed it on page 21.  Immediately above his signature is a

declaration saying:

> I have carefully read the Temporary Insurance Application and
> Agreement (TIAA) and understand and agree to the terms thereof
> including the conditions under which a limited amount of insurance
> may become effective prior to policy delivery.
> At the top of that signature page, it says:
>
> IN  CONNECTION  WITH  THIS  APPLICATION  FOR
> INSURANCE, IT IS UNDERSTOOD AND AGREED THAT:
>
> I/we have read the application and all statements and answers
> contained in Part 1 and Part 2 of this application and any supplements
> thereto, copies of which shall be attached to and made a part of any
> policy to be issued, are true and complete to the best of my/our
> knowledge and belief and made to induce Banner Life Insurance
> Company (the Company) to issue an insurance policy.  The statements
> and answers in the application are the basis for any policy issued by
> the Company, and no information about me will be considered to have
> been given to the Company unless it is stated in the application.  I
> agree to notify the company of any changes to the statements and
> answers given in any part of the application before accepting delivery
> of any policy.

**C.    Part 2.**

Part 2 is found on pages 22 through 27 of the Appendix and is titled

"Medical History."  It contains questions about Gary's medical history.  In it are

the misrepresentations Banner claims now to have relied on in entering into the

TIAA.

## Gary's Medical History

Banner performed its own paramedical exam on Gary on December 9, 2010 and four days later received blood work showing elevated liver function tests. (78,79)

The underwriter reviewed all of Gary's medical records from his primary care physician by January 6, 2011. (384)    Those records showed Gary had sleep apnea episodes and fatigue as far back as 2007 (320), and that his doctor had recommended that he have a sleep study performed. (321)  They also showed multiple elevated liver function tests from May 2008 through May 2010, with his doctor sending him several letters about the fact that he had elevated liver function tests. (342)  They also showed that his doctor had Gary undergo an abdominal sonogram which showed increased echogenicity of the liver suggesting steatosis or fibrosis. (344)   The records also showed multiple emphatic referrals by his doctor to a gastroenterologist for evaluation regarding his liver. (335-339)

## The Discovery Dispute Facts

Jacqueline filed an interrogatory asking Banner what was meant by the note "Application of check changed bound N to Y."  (58)  It further asked "if the word 'bound' in the previous quote means anything other than Banner binding life insurance coverage under the TIAA to Gary C. Noel, fully explain what is meant by the word 'bound'."  The defendant answered as follow:

9

> The note "Application of check changed TIAA bound N to Y" on Banner 00203 does not mean that Banner made a legal determination that it was "binding" temporary life insurance coverage under the TIAA at that time. The note "Application of check changed TIAA bound N to Y" was instead an internal, system generated note, the purpose of which was to acknowledge to the file that Banner had received a check as a form of payment in connection with the TIAA. In order for the TIAA bound N (i.e. no) flag to be changed to the Y (i.e. yes) flag, the Banner employee needed to confirm that, in addition to receiving the check, Banner had also received a fully completed dated and signed TIAA on which all questions were answered "no". (58)

Not thinking that response answered the question, Jacqueline moved the court to compel Banner to "answer the simple question of what 'bound' meant in the note of December 10, 2010." (59)   Banner answered that Brook Vemuri signed the Interrogatory Answers, that her deposition had been scheduled and "defendant's counsel can question her at that time about that Interrogatory Answer." (88)   Her deposition relating to what the word "bound" means is found on pages 359-362 of the Appendix.   She said it was the name of a flag in their computer system. (359-360)   She testified there were two pieces of the TIAA and two flags to represent those two pieces.   The first flag goes from No to Yes when Banner receives the completed TIAA. The second goes from No to Yes when Banner receives acceptable payment. (360) Otherwise, she did not know what the word "bound" meant. (361)

10

## SUMMARY OF THE ARGUMENT

In Virginia "contracts for temporary insurance pending an investigation of the risk by the insurer, or until the issuance of a formal policy, are quite common … [and] when entered into…are binding on the insurance company." *Bituminous Casualty Corp*. v. *Denver Baldwin*, 196 Va. 1020; 86 S.E.2d 836, 839 (Va. 1955).

The TIAA is a separate and distinct contract for temporary insurance. It contained no misrepresentations. Gary answered truthfully all medical questions on it. (73) Truthful answers to these medical questions were what induced Banner to bind coverage during the underwriting process. Banner was only relying on the medical history contained in Part 2 to determine whether to issue a permanent insurance policy, not temporarily bind coverage under the TIAA. Its own documents clearly show it was not relying on Part 2 answers to bind temporary coverage.

Banner's actions after the TIAA was signed also clearly show it was not relying on Part 2 in binding coverage.

Relying on the "Other Limitations" provision in the TIAA, the District Court found that Banner could rescind the TIAA because it relied on misrepresentations contained in Part 2. The District Court erroneously interpreted the "Other Limitations" provision, contrary to its clear language, as incorporating Part 2. To the extent the "Other Limitations" provision is ambiguous, the District Court

11

erroneously interpreted it in favor of Banner rather than in favor of the insured. The District Court's decision ignored the fact that Banner never relied on any misrepresentations contained in Part 2, and thus any such misrepresentations were not material.

Finally, the District Court erred in permitting rescission when Banner did nothing timely after becoming aware of misrepresentations in Part 2 upon which it now claims to have relied.

## **ARGUMENT**

### **Standard of Review**

Where the appellant seeks review of a District Court decision granting summary judgment, the Court of Appeals applies the same standard the District Court did, viewing all facts and inferences in the light most favorable to the non-movant to determine whether summary judgment was appropriately granted. *United States for use of Global Bldg. Supply, Inc. v. WNH Ltd. P'ship.,* 995 F.2d 515; 1993 U.S. App. LEXIS 13518 (4th Cir. 1993). The interpretation of a written contract is a question of law that turns upon a reading of the document itself, and a district court is in no better position than an appellate court to decide such an issue. *Hendricks v. Cent. Reserve Life Ins. Co.,* 39 F.3d 507, 512; 1994 U.S. App. LEXIS 31301 (4th Cir. 1994), *Seabulk v. American Home*, 377 F.3d 408; 2004 U.S. App. LEXIS 15539 (4th Cir. 2004).

## Discussion of the Issues

**A.  Does the "Other Limitations" provision in the TIAA incorporate by reference the Part 2 questionnaire related to the thirty year permanent policy?**

The answer is no.  In entering summary judgment for Banner, the District Court found that Gary made material misrepresentations in the Part 2 Medical History related to his application for permanent insurance, and thus under the "Other Limitations" provision, Gary was entitled only to a return of the premium for the temporary insurance coverage.  That provision provides, in pertinent part, that the Insurer's liability will be limited to a return of the Amount Remitted if: (1) any part of the life insurance application or this TIAA contains a misrepresentation material to the Insurer."  The District Court erroneously concluded that "any part of the life insurance application" includes Part 2.

The TIAA is a separate and distinct contract.  It includes both a temporary insurance agreement and an application, and it also makes reference to Banner's Part 1 form.  It makes no mention to the Part 2 medical history form.

The Other Limitations provision on its face makes reference solely to the TIAA insurance application and agreement.   The TIAA is a freestanding agreement with its own questions designed to determine the applicant's suitability for temporary coverage.  There is no genuine dispute that Gary answered the questions on the TIAA accurately and honestly, that he submitted a check to

13

Banner to cover the premium for the temporary policy, that he was fully qualified for coverage under the terms and conditions of the TIAA, and thus the coverage was bound.

Moreover, as noted by the District Court, even if the provision is ambiguous, it must be construed "strictly against the insurer and liberally in favor of the insured, so as to effect the dominant purpose of . . . payment to the insured." *Great Am. Ins. Co. v. Gross*, 2008 U.S. Dist. LEXIS 10079; 2008 WL 376263, at *6 (E.D.Va. Feb. 11, 2008) (quoting *Seabulk Supra*)  In construing the meaning of the term "life insurance application" in the Other Limitations provision, the District Court found it necessary to make reference to documents outside the TIAA, including Part 1 and Part 2.  (Memorandum Opinion at 14)  Although the District Court stated that the term "life insurance application" is unambiguous, it seemingly found its use in the Other Limitations provision as a whole to be ambiguous. However, rather than construe the provision liberally in favor of the insured, it found that the "more sensible" construction is that it incorporates by reference Part 2. *Id.*

There is no basis to incorporate the Part 2 medical history into the freestanding TIAA through the "Other Limitations" provision.  Not only does the TIAA not make any reference to Part 2, it includes independent underwriting questions focused on the issuance of temporary insurance.  At best, the disjunctive

14

sentence in the "Other Limitations" provision refers to the application information

provided in Part 1, but to the extent there is any question on this issue, it should be

resolved in favor of the insured, not Banner.

**B.    Even if Gary made misrepresentations in the Part 2 questionnaire for the permanent life insurance policy, were the misrepresentations material to Banner entering into the TIAA?**

The answer is no.   Even assuming the Other Limitations provision

incorporates Part 2, for a misrepresentation of Gary's to be material, it must have

been relied upon by Banner.  Virginia Code § 38.2-309 provides:

> All statements, declarations and descriptions in any application for an insurance policy or for the reinstatement of an insurance policy shall be deemed representations and not warranties.  No statement in an application or in any affidavit made before or after loss under the policy shall bar a recovery upon a policy of insurance unless it is clearly proved that such answer or statement was material to the risk when assumed and was untrue.

The Supreme Court of Virginia in *Montgomery Mutual Insurance Company*

*v. Jeffrey Riddle, et al.,* 266 Va. 539;  587 S.E. 2d 513 (2003) said:

> …we recognize the intimate conceptual relationship between reliance and materiality.  It is clear that the General Assembly only wanted matters "material to the risk" to be at issue in the voiding of a policy of insurance. "Material" is defined as "of such a nature that knowledge of the item would affect a person's decision-making process."  *Black's Law Dictionary* 991 (7th ed. 1999). **Obviously, if there is no reliance upon a statement or omission, it could not have affected the decision-making process;  consequently,  it  could  not  be**

15

**material**.   Accordingly, we reiterate that when an insurance carrier seeks to void a policy for alleged material omissions or misrepresentations pursuant to Code § 38.2-309, the insurer must show, by clear proof, two facts: (1) that the statement or omission on the application was untrue; and (2) that the insurance company's reliance on the false statement or omission was material to the company's decision to undertake the risk and issue the policy.  To prove the falsity is not sufficient; the insurer must prove clearly that truthful answers would have reasonably influenced the company's decision to issue the policy. (Emphasis added)

Banner must prove clearly that it relied on the misrepresentation in entering into the TIAA.  In *Commercial Underwriters Insurance Company v. Hunt & Calderone,* 261 Va. 38; 540 S.E.2d 491 (2001) The Supreme Court of Virginia said:

We have construed Code § 38.2-309 and its predecessors to require an insurance company contesting a claim on the basis of an insured's alleged misrepresentation to show, by clear proof, two facts: (1) that the statement on the application was untrue; and (2) that the insurance company's reliance on the false statement was material to the company's decision to undertake the risk and issue the policy. *Harrell v. North Carolina Life,* 215 Va. 829 at 831-32; 213 S.E. 2d 792 at 794-95.   To prove the falsity is not sufficient; the company must prove *clearly* that truthful answers would have reasonably influenced the company's decision to issue the policy. *See Mut. of Omaha Ins. Co. v. Echols Adm'rs,* 207 Va. 949, 953-54; 154 S.E.2d 169, 172 (1967) (defining "material"). (Emphasis original)

16

Not only is Banner unable to show by clear proof that it relied upon the answers in Part 2 to enter into a temporary insurance contract, but six facts clearly show that Gary's answers in Part 2 had nothing to do with Banner's decision making process in entering into the TIAA and that Banner in no way relied on those answers.

1.    Banner bound coverage on December 10, 2010. Its internal computer system shows "Bound N to Y." No to Yes. The importance of that notation is that it clearly shows that Banner considered itself bound under the terms of the TIAA, and most importantly, considered itself bound as of December 10, 2010.[2]   The underwriter didn't receive anything until December 14, 2010. Therefore, Banner could not possibly have relied on misrepresentations in Part 2 in considering temporary coverage bound as of December 10, 2010.

2.    On December 14, 2010, Banner received the results of its paramedical exam showing Gary had elevated liver function tests. (78-79)  On January 6, 2011, the Banner underwriter knew from Gary's medical records that he had sleep apnea episodes and fatigue and had been recommended by his doctor to have a sleep study performed, all of which conflicted with his answers in numbers 18 and 23d

---

[2] The District Court in its opinion said:  "The initial problem with Ms. Noel's argument is that the computer system notation is insufficient evidence that Banner considered itself 'bound' under the TIAA."   However, the notation is clear evidence that Banner did consider itself bound.  At a minimum, this creates a genuine issue of material fact for determination by a jury.

17

in Part 2.  By January 6, 2011, the underwriter also knew that for years, Gary had elevated liver function tests, had been sent 7 letters by his primary care physician referencing the elevated liver function tests, that his primary care physician referred him to a gastroenterologist, and that Gary had an abdominal sonogram which showed increased echogenicity of the liver suggesting steatosis or fibrosis, all of which conflicted with his answers in numbers 8, 23a, 23b, 23d and 23e in Part 2.

In *Finch v. Garrett,* 109 Va. 114; 63 S.E. 417, the Supreme Court of Virginia said:

> …When a party intends to repudiate a contract on the ground of fraud, he should do so as soon as he discovers the fraud.  If after discovery of the fraud he treats the contract as a subsisting obligation, he will be deemed to have waived his right of repudiation.  **Prompt action is essential when one believes himself entitled to a rescission of a contract**.  (Citations omitted) [Emphasis added]

Had Banner relied on Part 2 answers in binding temporary coverage, it would have immediately stopped the temporary coverage on January 6, 2011, under one of the stop date provisions of its TIAA.  Not doing so clearly shows it wasn't relying on Part 2 answers in temporarily binding coverage and willingly let the coverage continue until Gary's death on February 7, 2011.

Lucas never relied on Part 2 for anything.  He relied solely on the medical records.  He had reviewed them by January 6, 2011 and never did anything to stop the temporary coverage, clearly showing Banner didn't rely on anything in Part 2.

18

3.    The TIAA shows Banner only needed Part 1 and the check.  The TIAA never mentions Part 2 anywhere.  If Banner was relying on Part 2 to bind temporary coverage, the top of the TIAA would have said Banner needed Parts 1 and 2 and the check.

4.    The signature page of Part 1 of the general application for a permanent insurance policy unequivocally shows Banner was not relying on Part 2 to bind coverage during the underwriting process.  It says:

> IN CONNECTION WITH THIS APPLICATION FOR INSURANCE, IT IS UNDERSTOOD AND AGREED THAT:
>
> I/we have read the application and all statements and **answers contained in Part 1 and Part 2** of this application and any supplements thereto, copies of which shall be attached to and made a part of any policy to be issued, **are true and complete to the best of my/our knowledge and belief and made to induce Banner Life Insurance Company (the Company) to issue an insurance policy**. The statements and answers in the application are the basis for any policy issued by the Company, and no information about me will be considered to have been given to the Company unless it is stated in the application.  I agree to notify the company of any changes to the statements and answers given in any part of the application before accepting delivery of any policy. [Emphasis added]

This clearly shows Banner is relying on statements made in Part 2 to issue an insurance policy, not to temporarily bind coverage under the TIAA.  Banner could have easily added words "and to bind coverage under the TIAA."  For Banner to prevail, a court would have to add those words.  But Banner represented to Gary

19

that it would only rely on Part 2 in issuing an insurance policy, not in binding coverage temporarily.

5.    The signature page on the TIAA says:

> I represent that: (1) I have read and received a copy of this TIAA and agree to all of its terms and conditions; (2) I understand and agree **that temporary insurance will not begin if any question in this TIAA is answered Yes or left blank** and any collection of premium will not activate coverage under this agreement; (3) **the answers given in this TIAA are true and correct**, and I understand that, if they are false, temporary insurance may be denied or declined… [Emphasis added]

These words clearly show Banner is only relying on the answers to the questions in the TIAA being accurate to temporarily cover Gary during the underwriting process. For Banner to prevail would result in a court adding the words "and Part 2 – Medical History" after TIAA in part (3) above.

6.    Jana Knowles' letter of denial to counsel of July 5, 2011, five months after Gary's death, also shows no reliance. Nowhere in that five page letter does Ms. Knowles claim reliance on Part 2 answers in temporarily binding coverage. On the last page of her letter, she says:

> Mr. Noel's misrepresentation on the Application, Part 2 were material in that Banner's underwriting department has opined that the Company would not have issued a policy to Mr. Noel at the Standard Plus rating as applied for.

That fact is not in dispute.  But it shows that Banner only relied on Part 2 answers in determining whether or not to issue a permanent policy, not on whether to temporarily bind coverage.

**C.**  **Is Banner entitled to rescission of the TIAA after failing to timely repudiate its obligations thereunder when it discovered what it now claims are material misrepresentations in Part 2, or is Banner estopped from doing so?**

Banner should not be entitled to rescind the TIAA and should be estopped from doing so because of its failure to promptly repudiate its obligations under the TIAA after discovery of what it now claims are misrepresentations by Gary in Part 2.  In *Link Associates v. Jefferson Standard Life Insurance Company,* 223 Va. 479; 291 S.E. 2d 212; 1982 Va. LEXIS 228 (1982), the Virginia Supreme Court said:

> The law on the subject is settled.  Prompt action is required by the deceived party upon his discovery of misrepresentations amounting to constructive fraud.  A party intending to repudiate a contract on the ground of fraud must act within a reasonable time and with **with great punctuality** upon learning of the wrong.  He will be deemed to have waived his right of repudiation if, after discovery of the fraud, he treats the contract as a subsisting obligation.  Citing *Finch supra.*  And the duty of prompt disaffirmance is not dependent upon the proof of harm to the deceiving party caused by the delay.  *West End Real Estate Co. v. Claiborne*, 97 Va. 734, 752; 34 S.E. 900, 907 (1900). (Emphasis added.)

The Court further said in *Link*:

> Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, **at once** announce his purpose, and adhere to

21

> it…He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted… Citing *Grymes v. Sanders,* 93 U.S. 55, 62 (1876) quoted in *United States v. Idlewild Pharmacy, Inc.,* 308 F.Supp. 19, 23 (E.D. Va. 1969). (Emphasis added.)

It was error to grant Banner the right of rescission. By January 6, 2011, Banner knew of the misrepresentations it now claims to have relied upon in entering into the TIAA. If Banner in truth relied upon those misrepresentations in entering into the TIAA, then it had a duty "at once" and "with great punctuality" to have repudiated the TIAA and could have done so immediately by notification to Gary. Instead, it "play(ed) fast and loose" by letting Gary and Jacqueline think that he was still covered until the time of his death and waiting five months to let Jacqueline know that it was denying the claim. Banner should not be entitled to rescission and should be estopped from attempting to rescind because of its untimely repudiation of the TIAA which was not done until the letter of Jana Knowles sent five months after his death.

**D. Did the District Court err in awarding attorney's fees and costs to Banner in a discovery dispute relating to the binding of insurance coverage?**

The answer is yes. Banner's response to the interrogatory asking what the word "bound" meant would lead one to think that it miraculously appeared in Banner's computer system. The word "bound" is a common word used in the insurance industry referencing the binding of insurance coverage. Neither

22

Banner's answer nor Vemuri's deposition ever answered the simple question posed to Banner as to what the word "bound" meant. It clearly meant here that Banner considered itself bound under the terms of the temporary insurance agreement on December 10, 2010.

The District Court found Banner's answer to the interrogatory sufficient "particularly in light of Defendant's opportunity to depose Plaintiff's employee." (356) Ms. Vemuri was that witness. She knew "bound" was the name of a flag in Banner's computer system and she knew that the flag went from No to Yes when the TIAA was received, found to be valid, and the check was applied to the policy. Other than that, she had no idea what it means to bind insurance coverage or what the word "bound" means. For obvious reasons, Banner has done everything it can to run away from that common term in its industry, and thus far, has been successful. Banner should not be awarded fees when it never answered the simple question of what "bound" meant in its computer system.

## **<u>CONCLUSION</u>**

Your appellant respectfully requests the following relief:

1.    That summary judgment granted Banner by the District Court be reversed;

2.    That Banner's request for declaratory judgment and rescission be denied and dismissed;

3.      That summary judgment be granted to your appellant on her contract action with judgment being entered in her favor against Banner in the amount of $1,000,000 plus interest from February 7, 2011;

4.      That this Court find that Banner's attempt at showing reliance on Part 2 in entering into the temporary life insurance agreement is bad faith; and,

5.      That the case be remanded to the District Court for a determination of attorney's fees pursuant to § 38.2-209 of the Code of Virginia.

## REQUEST FOR ORAL ARGUMENT

Your appellant respectfully requests oral argument.


Respectfully submitted,

JACQUELINE L. NOEL,

/s/ Joseph E. Blackburn, Jr.
Of Counsel

JOSEPH E. BLACKBURN, JR.
BLACKBURN, CONTE, SCHILLING & CLICK, PC
300 West Main Street
Richmond, Virginia 23220
(804) 782-1111

24

EXHIBIT A

# TIMELINE

**Nov. 30, 2010**
Documents
Including
TIAA
Signed

**Dec. 10, 2012**
Coverage
Bound

**Jan. 6, 2011**
Underwriter Lucas
reviewed all of
Gary's PCP
Medical Records

**Feb. 7, 2011**
Gary Dies

**Dec. 9, 2010**
Paramedical
Exam

**Dec. 14, 2010**
Lucas, the underwriter,
first reviews the
Noel package,
Banner received
Elevated Liver
results from
Paramedical

**Feb. 3, 2011**
Banner decides
to postpone
application

A-1

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. 12-1329          **Caption:** Banner Life Insurance Company v. Jacqueline L. Noel

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]*

☑    this brief contains _____5,703_____ [*state the number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐    this brief uses a monospaced typeface and contains _____ [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

☑    this brief has been prepared in a proportionally spaced typeface using Microsoft Office 2010 [*state name and version of word processing program*] in 14-Point Times New Roman [*state font size and name of the type style*]; *or*

☐    this brief has been prepared in a monospaced typeface using _____ [*state name and version of word processing program*] with _____ [*state number of characters per inch and name of type style*].

(s) Joseph E. Blackburn, Jr.

Attorney for Jacqueline L. Noel

Dated: 5/30/2012

Rev. 03/03/11

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

ROBERT B. DELANO, JR.
SANDS ANDERSON, PC
1111 East Main Street
Post Office Box 1998
Richmond, Virginia 23218
(804) 783-7268

*/s/ Catherine B. Simpson*
Counsel Press LLC
1011 East Main Street
Suite LL-50
Richmond, Virginia 23219
(804) 648-3664

Filing and service were performed by direction of counsel